UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER MCINNIS, individually and on behalf of her infant children O.S., C.S. (female), and C.S. (male),<br><br>                  Plaintiffs,<br><br>  -v-<br><br>CITY OF NEW YORK, et al.,<br><br>                  Defendants. | 24-CV-3449 (GHW) (RFT)<br><br>**OPINION & ORDER** |

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

      Pending before me is a motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure brought by Plaintiffs Jennifer McInnis and her three minor children, seeking their expenses and fees incurred because of the alleged failure by Defendants Leah Bralow, Rutmi Goradia, and Nyasha Beepot (together, the "Hospital Defendants") to timely update their initial disclosures and to comply with a Court order (ECF 106) to produce certain documents (the "Discovery Sanctions Motion"). (*See* ECF 109, Mot.) For the reasons set forth below, the Discovery Sanctions Motion is GRANTED IN PART, in that, pursuant to Rule 37(b)(2)(C), the Hospital Defendants shall be required to pay Plaintiffs' reasonable attorneys' fees and costs in connection with the Discovery Sanctions Motion, in an amount to be determined following Plaintiffs' submission of a fee application and the Hospital Defendants' submission of objections thereto. The Discovery Sanctions Motion is otherwise DENIED.

I.

**FACTUAL BACKGROUND**

Plaintiffs' claims arise out of, among other events, the removal of one of McInnis' minor children, O.S., from his school and from McInnis' care on October 28, 2022 following a report of child neglect. (*See* ECF 53-1, Compl. ¶ 17.)

On the morning of October 28, 2022, McInnis was trying to get her three young children ready for school, but O.S. was playing a video game and refusing to cooperate. McInnis' adult son, James Taylor, took the game from O.S. (*See id.* ¶¶ 29-32, 35.) O.S. ran out of the apartment and out of the building. McInnis and Taylor ran after O.S., chasing O.S. as he ran towards a busy street. McInnis and Taylor grabbed O.S. as O.S. was about to run into traffic and pulled O.S. back to safety. Taylor accidentally scratched the right side of O.S.'s neck when Taylor grabbed O.S. (*See id.* ¶¶ 36-42.) McInnis subsequently walked O.S. to school. (*See* ¶¶ 46-47.)

At school, O.S. told someone that his adult brother and mother had beaten him up because of his misbehavior in music class. (*See id.* ¶¶ 48-51.) An employee of the Administration of Children's Services ("ACS") received a report of child neglect from O.S.'s school and told Defendant Treasure Pray, the assigned ACS caseworker, to travel to O.S.'s school and to get permission from a parent or guardian before transporting O.S. anywhere. Upon arriving at O.S.'s school, Pray immediately took O.S. to St. Barnabas Hospital for an examination, without obtaining permission from O.S.'s parent or guardian. (*See id.* ¶¶ 52-56.)

ACS called McInnis to tell her that O.S. was at St. Barnabas Hospital and that she could meet him there. McInnis immediately went to the hospital. Defendant Beepot, a registered nurse at St. Barnabas Hospital, took O.S.'s vitals; when O.S. arrived at the hospital, he appeared

playful and smiling, and he said that no one had physically hurt or threatened him. (*See id.* ¶¶ 70-74.) Defendants Dr. Bralow, an attending physician at St. Barnabas Hospital, and resident physician Dr. Goradia examined O.S.'s nose and detected no signs of trauma, bleeding, or swelling. McInnis explained to the ACS worker what had happened that morning and how O.S.'s neck been scratched. O.S. was kept at the hospital for several hours. Bralow informed McInnis that O.S.'s whole body had been examined for signs of injury and trauma and that his only injury was the scratch on the right side of his neck. Bralow questioned O.S. about the alleged assault, and O.S. told her that Taylor had choked him and beaten him and that he hurt everywhere. O.S. claimed that his mother was in the bathroom at the time and that he did not scream for help. (*See id.* ¶¶ 81-87.)

Bralow observed that O.S. frequently changed his story and was an unreliable narrator. She spoke to McInnis, who explained what had happened that morning. Bralow noted that O.S. frequently asked about getting back his video game. Bralow found that there were no visible injuries consistent with O.S.'s story and that the abrasion on O.S.'s neck appeared consistent with McInnis' account. After several hours, McInnis was cleared to take O.S. home. (*See id.* ¶¶ 88-92.)

II.

**PROCEDURAL HISTORY**

On May 3, 2024, Plaintiffs filed this action against the City of New York (the "City"), ACS, two ACS employees (Pray and Mews), and three employees of St. Barnabas Hospital (Beepot, Bralow, and Goradia), alleging violation of Plaintiffs' rights under the Fourth and Fourteenth

Amendments. (*See* ECF 1, Compl. ¶¶ 1-2.)[1] On May 8, 2024, Judge Gregory H. Woods referred the matter to Magistrate Judge Valerie Figueredo for general pretrial supervision and dispositive motions. (*See* ECF 27, Order of Reference.) On May 9, 2024, the referral was reassigned to me.

Answers to the complaint were filed by five defendants by August 15, 2024. (ECF 36, Beepot Ans.; ECF 45, Bralow Ans.; ECF 54, Goradia Ans.; ECF 71, City and Pray Ans.) On August 16, 2024, Plaintiffs voluntarily dismissed their claims against Mews (*see* ECF 73, Not. of Voluntary Dismissal), and on May 19, 2025, they voluntarily dismissed Beepot (*see* ECF 113, Stip. of Voluntary Dismissal.)

The parties' proposed case management plan was entered on August 15, 2024 (ECF 70). The deadline for completing discovery was May 7, 2025. (*See* ECF 80, Order.) After largely completing discovery, on April 2, 2025, Plaintiffs reached a settlement in principle with the City and Pray (*see* ECF 119, Supplemental Declaration of Jennifer McInnis ¶ 17), which settlement I approved on June 3, 2025 (ECF 123, Order), leaving Bralow and Goradia as the only remaining Defendants.

The Discovery Sanctions Motion arises out of Plaintiffs' contention that counsel for the Hospital Defendants failed to comply with discovery obligations pursuant to Rule 26 and an order of this Court (ECF 106). On September 6, 2024, the Hospital Defendants made their initial disclosures, stating that pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), "Dr. Leah Bralow, MD participates in the SBHPMLP (St. Barnabas Hospital Physician's Malpractice Program) which

---

[1] ACS was not a proper defendant; any claims against ACS must be brought against the City. *See Wright v. Admin. of Child. Servs.*, No. 23-CV-10381 (LTS), 2024 WL 622280, at *2 (S.D.N.Y. Feb. 14, 2024).

provides indemnification for this claim up to $1M"; "Rutmi Goradia, MD is covered under St. Barnabas Hospital Self Insurance Funds"; and "Nyasha Beepot, RN is covered under St. Barnabas Hospital Self Insurance Funds." (ECF 109, Mot. at 2.)

On April 11, 2025, the Hospital Defendants' counsel first stated that her clients were not insured. (*See id.* at 4.) Plaintiffs' counsel pointed out that this assertion was inconsistent with the Hospital Defendants' initial disclosures, and the Hospital Defendants' counsel said she would look into the matter. (*See id.*) On May 12, 2025, after the close of discovery and eight months after the Hospital Defendants' initial disclosures, the Hospital Defendants' counsel provided an amended Rule 26 disclosure, stating that "[t]here are no applicable insurance agreements" for the Hospital Defendants "under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." (*See id.* at 2.) Upon receiving the amended disclosure, Plaintiffs' counsel requested an explanation for the change in insurance coverage disclosed; the Hospital Defendants' counsel responded that the insurance information had been "inadvertently disclosed" and that the Hospital Defendants had "no coverage for cases like this." (*Id.*) Plaintiffs sought a pre-motion conference to address the issue. (*See id.*)

On May 13, 2025, I held a conference, during which the Hospital Defendants' counsel acknowledged that she had not reviewed any insurance policies but stated:

> So my understanding was that the – the insurance policy that was disclosed doesn't apply to this type of case, the medical malpractice insurance. So when I realized what I disclosed was incorrect, I informed [Plaintiffs' counsel], and I was late on submitting an amended initial disclosure. But the doctors do not have coverage for this case. The insurance that they have would not have coverage for . . . .

5

(ECF 124, May 13, 2025 Conference Transcript ("5/13/2025 Tr.") at 9:15-22.) When I asked how she had come to her understanding if she had not reviewed the documents in question, she said that she had been in contact with the doctors and the hospital, because "the insurance is through the program of the hospital." (*Id.* at 9:23-10:2.)

> I responded:
>
> So the first thing that's going to happen is that you are going to, by the close of business tomorrow, get copies of the relevant policies, and you are going to provide them to [Plaintiffs' counsel]. And [Plaintiffs' counsel] is going to read the policies. And I suggest that you read the policies as well, because I don't see how you can be in a position to make representations without having looked at the relevant documents.

(*Id.* at 10:3-10.) Counsel for the Hospital Defendants said she understood. (*See id.* at 10:14.) I followed up with a minute order (ECF 106).

On May 14, 2025, instead of complying with that order, the Hospital Defendants sent a letter to Plaintiffs' counsel, stating that there were no relevant insurance policies and that the Hospital Defendants were uninsured for this case. (ECF 109, Mot. at 1.) On May 15, 2025, Plaintiffs' counsel responded by letter, taking the position that the Hospital Defendants had failed to comply with my minute order (ECF 106) and my clear instruction during the May 13, 2025 conference. Plaintiffs' counsel followed up, and the Hospital Defendants' counsel eventually responded, stating, as she had at the conference, that she had been mistaken when she had stated that her clients had relevant insurance policies and that in fact there was no insurance covering the claims against the Hospital Defendants in this case. After a meet and confer session, the Hospital Defendants' counsel reiterated that the Hospital Defendants had no insurance and therefore would not be producing any insurance policies. (ECF 109, Mot. at 1.)

Plaintiffs sought a pre-motion conference to address their request for an order: (1) compelling the Hospital Defendants to comply with my order of May 13, 2025, (2) for sanctions in the form of compensation for the time spent by Plaintiffs' counsel in drafting the application for a pre-motion conference, and (3) for sanctions in the form of costs incurred by Plaintiffs' counsel after April 2, 2025 due to the Hospital Defendants' failure to timely update their Rule 26 disclosures on their insurers, or lack thereof. (*See id.* at 6.) The Hospital Defendants submitted a letter in response, stating that, due to the lack of applicable insurance, there was no basis for sanctioning the Hospital Defendants; the Hospital Defendants concluded that Plaintiff's motion for sanctions should be denied and that the Court should impose sanctions against Plaintiffs. (*See* ECF 114, Hospital Defs.' Resp.)

I held a conference on May 20, 2025, during which I again ordered production of the insurance agreements initially disclosed by the Hospital Defendants' counsel; I followed up with a written order. (*See* ECF 106, Order.) The relevant documents were produced, and Plaintiffs have not contested the Hospital Defendants' position that there is no coverage for the claims against them in this case.

### III.
### LEGAL STANDARDS CONCERNING SANCTIONS

**A.     My Authority To Impose Sanctions**

On May 8, 2024, Judge Woods referred this action to a magistrate judge for general pretrial management and dispositive motions pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(a). (*See* ECF 27, Order of Reference.) On May 9, 2024, that referral was reassigned to me. Accordingly, I have broad authority to impose discovery sanctions. *See In re Keurig Green*

7

*Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 492 (S.D.N.Y. 2022); *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2021 WL 1191527, at *4 (S.D.N.Y. Mar. 30, 2021). Orders imposing discovery sanctions "are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction disposes of a claim." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *16 (S.D.N.Y. July 18, 2017), *adopted by* 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017); *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018) (finding "[t]he critical issue is what sanction the magistrate judge . . . imposes" rather than what the moving party seeks, meaning if the judge declines to impose a dispositive sanction, the decision is governed by Rule 72(a)).[2]

Plaintiffs do not seek discovery sanctions that "fully dispose of a claim or defense," and I am awarding no such sanctions. Therefore, under the referral for general pretrial supervision, it is appropriate for me to resolve the Discovery Sanctions Motion "in the first instance." *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *7 (S.D.N.Y. Mar. 12, 2018). If any objections are filed, Judge Woods would then review my rulings on a "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A).

**B.     Sanctions Under Rule 37(c)(1) for Failure To Timely Update Rule 26 Disclosures**

Rule 26(a)(1)(A)(iv) requires parties to include in their initial disclosures any insurance agreement with an insurer that "may be liable to satisfy all or part of a possible judgment" in

---

[2]     Unless otherwise indicated, this opinion and order omits internal quotation marks, alterations, and citations from quoted text.

8

the case. Fed. R. Civ. P. 26(a)(1)(A)(iv). This rule ensures that all potential sources of funds are disclosed promptly; the existence or not of insurance can influence litigation strategy and settlement decisions. *See Suffolk Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 270 F.R.D. 141, 142 (E.D.N.Y. 2010).

Courts interpret this rule broadly in light of the reference to insurers that "may be liable": a defendant must reveal all insurance policies that could potentially apply to the claims without determining whether the policies would actually provide coverage. If there is any possibility the insurer might have to pay, the policy must be disclosed. Defense counsel does not get to decide that a policy is inapplicable and then withhold it. *See, e.g.*, *Boyer v. Riverhead Cent. Sch. Dist.*, No. 05-CV-4955 (SJF) (AKT), 2006 WL 3833040, at *2 (E.D.N.Y. Dec. 29, 2006) (ruling that the plaintiff was entitled to production of the defendants' insurance agreements and that providing summaries to plaintiff was not sufficient under Rule 26(a)).

If a party's initial disclosure about insurance is later discovered to be incomplete or incorrect in a material way, Rule 26(e) imposes a duty to promptly correct or update insurance information. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *9 (S.D.N.Y. June 25, 2020) (holding that "[f]ailure to supplement or update a discovery request is sanctionable" conduct). Rule 26(e) supplementation should occur before the close of discovery – waiting until after discovery has closed to reveal a major change is potentially prejudicial. *See, e.g.*, *id.* at *9-10 (holding that a lengthy, unexplained delay in disclosure of discovery information prejudiced the plaintiffs' ability to conduct discovery and justified sanctions under Rule 37(c)).

An attorney's reliance on misinformation from an insurance carrier does not excuse her failure to disclose the relevant insurance policies, because the attorney has an obligation to investigate all potentially applicable insurance policies. *See Bouchard v. U.S. Tennis Ass'n, Inc.*, No. 15-CV-5920 (AMD) (LB), 2017 WL 10180425, at *7 (E.D.N.Y. Aug. 10, 2017), *adopted by* 2017 WL 3868801 (E.D.N.Y. Sep. 5, 2017). Indeed, the court in *Bouchard* held that counsel's failure to turn over all relevant insurance policies and failure to timely supplement his initial disclosures because of misinformation from the insurance provider was "plainly unacceptable," "highly unprofessional," and warranted sanctions, even though the court concluded that counsel had no improper intent. *Bouchard*, 2017 WL 10180425, at *7.

A party who fails to supplement initial disclosures in a "timely manner" after "learn[ing] that in some material respect the disclosure or response is incomplete or incorrect," as required by Rule 26(e), may be ordered to pay the "reasonable expenses, including attorney's fees, caused by the failure" or may be subject to "other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A), (C). Courts in this District have imposed sanctions for failure to timely supplement materially incorrect disclosures about insurance information. *See, e.g.*, *In re September 11th Liability Ins. Coverage Cases*, 243 F.R.D. 114, 131-32 (S.D.N.Y. 2007) (finding that sanctions are meant "to restore the parties to the position they would have occupied but for the breach of discovery obligations" even in the absence of bad faith); *Ritchie Risk-Linked Strategies Trading (Ir.) Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) (noting that, "[e]ven where preclusion is not ordered under Rule 37, it is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking disclosure and/or in seeking discovery sanctions"). "The

Second Circuit has characterized [the imposition of reasonable expenses, including attorneys' fees] as the mildest of the sanctions authorized by Rule 37." *Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 188 (E.D.N.Y. Sept. 30, 2005) (citing *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)).

C.     **Sanctions Pursuant to Rule 37(b)(2)(A) for Failure To Obey a Court Discovery Order**

Rule 37(b)(2)(A) provides for the imposition of sanctions when a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)." Fed. R. Civ. P. 37(b)(2)(A). There are two requirements to find a violation of this subsection: (1) the Court issued an order related to discovery; and (2) a party violated it. *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *14 (S.D.N.Y. June 20, 2019) (imposing sanctions for repeatedly violating court discovery orders).

"In deciding whether sanctions are merited under . . . [Rule] 37(b)(2), the Court need not find that the party acted in bad faith." *Perez v. Edwards*, No. 20-CV-1359 (LJL), 2023 WL 5935029, at *3 (S.D.N.Y. Sept. 12, 2023). "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 314 (S.D.N.Y. 2013) (holding that negligence need not require bad faith and can result instead from "a pure heart and an empty head").

When a party breaches discovery obligations that have been ordered by a court, the court supervising discovery is permitted to "issue further just orders," including, as relevant here, an order directing "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P.

37(b)(2)(A), (C); *see also Karsch,* 2019 WL 2708125, at *14 (explaining that Rule 37(b) sanctions are appropriately imposed for non-compliance with a court order directing compliance with discovery requests).

When determining the appropriate remedy for a violation of Rule 37(b), a court "should impose the least harsh sanction" that will "serve as an adequate remedy; the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal." *Slovin v. Target Corp.*, No. 12-CV-0863 (HB), 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013); *see also Grammar v. Sharinn & Lipshie, P.C.*, No. 14-CV-6774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (explaining that courts "should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future"). In addition, the Court "must" award "reasonable expenses, including attorney's fees, caused by the failure" to comply with court orders under Rule 37(b), "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "The burden is on the violator to show that there was a substantial justification for the violation, or that circumstances would make it unjust to award reasonable expenses to the moving party." *Susana v. NY Waterway*, 662 F. Supp. 3d 477, 493 (S.D.N.Y. 2023).

### IV.

### **ANALYSIS**

**A.   Sanctions Under Rule 37(c)(1) for Failure To Timely Update Rule 26 Disclosures**

The Hospital Defendants' initial disclosures dated September 6, 2024 stated that there were applicable insurance policies for each of them. (*See* ECF 109, Mot. at 2.) Their amended

12

initial disclosures dated May 12, 2025, stated that there are no applicable insurance policies for the claims against the Hotel Defendants in this case – which is materially different from the information originally provided. (*See id.*)

Plaintiffs are correct that the availability of insurance coverage is the type of information on which plaintiffs rely when making litigation decisions. (*See id.* at 3.) The failure by the Hospital Defendants' counsel to timely remedy the erroneous initial disclosure that there was insurance coverage for the claims against the Hospital Defendants was, at a minimum, "plainly unacceptable" and "highly unprofessional." *Bouchard*, 2017 WL 10180425, at *7.

The Hospital Defendants' counsel's explanation for the delay does not help their position. Counsel stated that she did not update the disclosure sooner because she had to wait until after the close of discovery to be sure that the insurance agreements were inapplicable. (*See* ECF 114, Hospital Defs.' Resp. at 2.) This argument turns the insurance disclosure obligation on its head: If there is any possibility the insurer might have to pay, the policy must be disclosed. *See, e.g., Boyer*, 2006 WL 3833040, at *2; *Urb. Outfitters, Inc. v. Hype Outfitters, Inc.*, No. 05-CV-6791 (KMK) (HBP), 2006 WL 8461853, at *1 (S.D.N.Y. Oct. 30, 2006) (finding the defendants' "failure [to produce any relevant insurance policies] particularly troubling," because the defendants did not overlook the policies, but "simply never bothered to look").

The Hospital Defendants' failure to supplement their initial disclosures in a "timely manner" means that, "to restore the parties to the position they would have occupied but for the breach of discovery obligations," *In re September 11th Liability Ins. Coverage Cases*, 243 F.R.D. at 131-32, the Hospital Defendants may be ordered to pay the "reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1)(A). Plaintiffs assert that

they were harmed by the Hospital Defendants' failure to timely update the initial disclosures about their insurance coverage in that, between April 2, 2025, when Plaintiffs reached an agreement in principle with all remaining Defendants except the Hospital Defendants, and May 12, 2025, when the updated initial disclosures were provided, Plaintiffs' counsel "expended time, energy and expenses on this case, including the preparation and completion of all party depositions, which relate to the liability of Defendants Goradia and Bralow." (ECF 109, Mot. at 4.) Plaintiffs sensibly have not sought fees and costs going back further – because Plaintiffs were litigating against the City and Pray before April 2, 2025, they would be hard-pressed to show how they were prejudiced by the Hospital Defendants' failure to disclose accurate insurance information at the onset of litigation.

While, as I noted above, the Hospital Defendants' failure to update their insurance coverage status between April 2, 2025 and May 12, 2025 was inappropriate, I cannot conclude that Plaintiffs have been prejudiced as a result. To begin with, the Hospital Defendants' counsel first mentioned her clients' lack of insurance on April 11, 2025; she agreed, at the request of Plaintiffs' counsel, to investigate the discrepancy between that position and the original Rule 26 disclosures. (*See id.* at 4.) However, Plaintiffs' counsel described no follow up she undertook during the month that ensued before the Hospital Defendants provided an updated Rule 26 disclosure. (*See id.* at 2-5.) I conclude that Plaintiffs' counsel was in part responsible for the delay.

Additionally, Plaintiffs have been aware of the Hospital Defendants' actual insurance coverage status since late May 2025, yet they have continued to litigate and have opposed the Hospital Defendants' summary judgment motion. I therefore have no basis to conclude that

14

Plaintiffs would have made different litigation choices if they had known sooner that the Hospital Defendants lacked insurance coverage. I therefore decline to issue an order under Rule 37(c)(1) requiring the Hospital Defendants and their counsel to pay Plaintiffs' reasonable attorneys' fees for the period between April 2 and May 12, 2025, even though I conclude that the Hospital Defendants delayed updating their Rule 26 disclosures during that period in violation of Rule 26(e).

**B.     Sanctions Pursuant to Rule 37(b)(2)(A) for Violating a Court Discovery Order**

Plaintiffs go on to argue that the Hospital Defendants' counsel's failure to comply with my order of May 13, 2025 is sanctionable under Rule 37(b)(2)(A). (*See id.* at 1-2.) The Hospital Defendants respond that sanctions are inappropriate because "there are no policies of insurance applicable to this matter"; they contend that their counsel complied with the Court's order by informing Plaintiffs "that there were no insurance policies" in a letter dated May 19, 2025. (*See* ECF 114, Hospital Defs.' Resp. at 2.) The Hospital Defendants appear to be arguing that the insurance that they had originally disclosed did not fall within my minute order (ECF 106) because the insurance: (1) was a risk-funding program rather than insurance and (2) was not provided by an insurance company but rather by St. Barnabas Hospital. (*See* ECF 114, Hospital Defs.' Resp. at 1.)

I am unimpressed by this hair-splitting. The Hospital Defendants' initial disclosures said there was insurance that potentially covered the claims in the case. The updated disclosures said there was no such insurance. Even if the Hospital Defendants decided after making their original Rule 26 disclosures that the insurance they had identified was actually a risk-funding program offered by a hospital rather than an insurance company, the Hospital Defendants were

15

still obligated to share with Plaintiffs the documents reflecting the risk-funding program, so that Plaintiffs could test the assertion that there was no coverage. *See, e.g.*, *Boyer*, 2006 WL 3833040, at *2.

Certainly, once I issued an order directing the Hospital Defendants to produce the policies to Plaintiffs (ECF 106), the Hospital Defendants were obliged to comply. I am unpersuaded by their argument that they complied with my order by writing to Plaintiffs to say there was no relevant insurance policy (*see* ECF 114, Hospital Defs.' Resp. at 2). The Hospital Defendants' counsel stated at the May 13, 2025 conference that she had mistakenly indicated in the Rule 26 disclosures that there was an applicable insurance policy, but that "the insurance policy that was disclosed doesn't apply to this type of case." (ECF 124, 5/13/2025 Tr. at 9:15-17.) My statement that the "[Hospital Defendants' counsel is] going to, by the close of business tomorrow [May 14, 2025], get copies of the relevant policies, and . . . provide them to [Plaintiffs' counsel]" (*id.* at 10:3-6) came immediately after and was in direct response to that assertion by the Hospital Defendants' counsel. Accordingly, the Hospital Defendants cannot now argue that the documents reflecting possible coverage fell outside the scope of my order because the "policy" was actually a risk-funding program offered by a hospital rather than an insurance company. I therefore conclude that the Hospital Defendants and their counsel violated my order (ECF 106).

Courts "must" award "reasonable expenses, including attorney's fees, caused by the failure" to comply with court orders under Rule 37(b), "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The Hospital Defendants have not met their burden of showing that their failure to comply with

my May 13, 2025 order was justified or that there are other circumstances that make an award of expenses unjust, *see Susana*, 662 F. Supp. 3d at 493. Therefore, Plaintiffs are entitled to an award of their reasonable attorneys' fees in connection with their motion for sanctions under Rule 37(b). I will determine the amount of that award following Plaintiffs' filing of a fee application and the Hospital Defendants' filing of their objections thereto.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for sanctions is GRANTED IN PART, in that, pursuant to Rule 37(b), the Hospital Defendants and their counsel shall be required to pay Plaintiffs' reasonable attorneys' fees and costs in connection with the Discovery Sanctions Motion, in an amount to be determined following Plaintiffs' submission of a fee application and the Hospital Defendants' submission of objections thereto. The Discovery Sanctions Motion is otherwise DENIED. Plaintiffs shall submit their fee application by **August 22, 2025,** and the Hospital Defendants shall file their objections, if any, by **September 5, 2025.**

Dated: August 7, 2025
      New York, New York

SO ORDERED.

_____
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**